G. H. BRADFORD ET AL. V. THE STATE.

No. 3709.   Decided November 17, 1915.

Rehearing denied December 15, 1915.

**1.—Labor Law—Misdemeanor—County Court—Statement of Facts.**

Where the statement of facts was filed after the term of the County Court had adjourned, without any order of the court allowing this to be done, the same must be stricken out on appeal.

**2.—Constitutional Law—Eight-Hour Labor Law.**

The Act of the Thirty-third Legislature, page 127 pamphlet form, known as the eight-hour labor law, is constitutional.

**3.—Same—Complaint—Information.**

Where, upon trial of a violation of the eight-hour labor law enacted by the Thirty-third Legislature, the complaint and information were drawn strictly in accordance with said law and even negatived each and all of the exceptions in said law, the same was sufficient.

**4.—Same—Constitutional Law—Right of Contract.**

The Act of the Thirty-third Legislature is not unconstitutional in that it attempts to abridge the right of contract between employe and contractor, and denies the employe the right to sell his labor as he desires, under section 19, article I, of the Constitution of Texas.

**5.—Constitutional Law—Title of Act.**

The Act of the Thirty-third Legislature, known as the eight-hour labor law, is not uncertain and indefinite and is not unconstitutional because the title of the Act does not mention contractors or persons doing work under a contract, as required by section 35, article III, of the Constitution of Texas.

**6.—Constitutional Law—Laws of Other States.**

The Act of the Thirty-third Legislature, known as the eight-hour labor law, follows the law on this subject of other States, and the Act of Congress, all of which have been held to be constitutional. Following Atkin v. Kansas, 191 U. S., 207, and other cases.

**7.—Rule Stated—Contractors—Agent—Employes.**

Where the regulation is applied to the employes of the city, county or State government who are employed and paid directly by these respective governments, the constitutionality of the regulation can not be questioned for the

reason that these respective governments, in enforcing such regulations, are only exercising the general right of a party to a contract to insist on a certain provision in the contract of hiring, and the regulations apply to those laborers who are engaged on public works in the employ of contractors, to whom the work has been let on contract after the enactment of the regulation.

### 8.—Same—Title of Act—Constitutional Law—One Subject.

The title of the Act of the Thirty-third Legislature, known as the eight-hour labor law, comprehends and embraces every provision of the said Act contained therein, and in no way violates section 35, article 3, of the Constitution of Texas, requiring that no bill shall contain more than one subject, which shall be expressed in the title.

### 9.—Same—Object of the Law—Police Regulation—Right of Contract.

The Act of the Thirty-third Legislature, known as the eight-hour labor law, was enacted under the unquestioned police power of the Legislature to protect the lives and health of the citizens of the State, and is constitutional, even if it incidentally curtails or abridges the right, under the circumstances as enacted, of an employer and employe ordinarily privately and personally contracting in the particulars prohibited, as these must yield to the necessary and imperative public good.

### 10.—Same—Constitutional Law—General Emergencies.

The Act of the Thirty-third Legislature is not void for uncertainty or indefiniteness because of the generality of the emergencies which authorize laborers to work more than eight hours, as such exceptions and emergencies must necessarily be stated in general terms. Following Watson v. State, 13 Texas Crim. App., 76, and other cases.

### 11.—Same—Complaint—Information—County Work.

The contention that the pleading is insufficient because it does not charge that the defendants were doing the work themselves on behalf of the county, nor the work they were doing was not done by them directly by or on behalf of the county is untenable, and the pleading is sufficient.

### 12.—Same—Statutes Construed—Contractor—Agent—Employe.

The Act of the Thirty-third Legislature, known as the eight-hour labor law, is so framed as to embrace not only the contractor himself who directly contracts with the county, but also any person and the agent or employe of any person who shall fail or refuse to comply with the provisions of the Act.

Appeal from the County Court of Bexar. Tried below before the Hon. Nelson Lytle.

Appeal from a conviction of violating the eight-hour labor law; penalty, a fine of $50.

The opinion states the case.

*Ed H. Wicks* and *Henry, McClosky & Robinson,* for appellants.— On question of constitutionality of law: Chenoweth v. State Medical Board of Examiners, 51 L. R. R. N. S.), 958.

On question of insufficiency of complaint and information: Hunt v. State, 9 Texas Crim. App., 404; Price v. State, 17 id., 232; Pittman v. State, 14 id., 576; Strickland v. State, 19 id., 518.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Each of the appellants was convicted of violating the eight-hour labor law enacted at the Regular Session, Thirty-third Legislature, page 127, and assessed the lowest punishment.

This is a misdemeanor case tried in the County Court. The statement of facts was filed after the term of court had adjourned without any order of the court allowing this. Therefore, the motion of the Assistant Attorney General to strike out and not consider the statement of facts must be sustained.

Appellants attack said Act of the Legislature, claiming that it is unconstitutional and void on several grounds.

By section 1 of the Act it is enacted that eight hours shall constitute a day's work in one calendar day for all workmen or mechanics now employed, or who may hereafter be employed, by or on behalf of the State or of any county, municipality or political subdivision of the State where such employment, contract or work is for the purpose of constructing, repairing or making buildings, bridges, roads, highways, streams, levees or other work of a similar character requiring the services of laborers, workmen or mechanics.

The second section provides that all contracts hereafter made by or on behalf of the State, or any of said political subdivisions, with any corporation, person or association of persons for the performance of any work, shall be deemed and considered as made upon the basis of eight hours constituting a day's work. And makes it unlawful for any of such persons having a contract with the State, or any of said political subdivisions, to require or permit any such laborers, etc., to work more than eight hours per calendar day in doing such work, except in case "of emergency, which may arise in times of war or in cases where it may become necessary to work more than eight hours per calendar day for the protection of property, human life, or the necessity of housing inmates of public institutions in case of fire or destruction by the elements"; and that, in such emergencies, such laborers, etc., who work to exceed eight hours per day shall be paid on the basis of eight hours constituting a day's work; and that not less than the current rate per diem of wages in the locality where the work is being performed shall be paid to such laborers, etc.; and that every contract hereafter made for the performance of work for the State, or any of said subdivisions, must comply with the requirements of this section. It then further provides that the Act shall not affect contracts in existence at the time it takes effect, nor affect the present law governing State and county convict labor while serving their sentences as such.

The next section provides that any person, or any officer, agent or employe of any person, corporation or association of persons, or any officer, agent or employe of the State, county, municipality, or any legal or political subdivision of the State, county or municipality, who shall fail or refuse to comply with the provisions of the Act or who shall violate any of the provisions, shall, on conviction, be punished by

a fine of not less than $50 nor more than $1000, or by imprisonment not to exceed six months, or by both; and that every day of such violation shall constitute a separate offense.

Section 4 repeals all laws in conflict, and expressly the one designated in the section.

Section 5 states that "the fact that there is no adequate law now upon the statute books defining what constitutes a legal calendar day's labor and regulating the hours of labor upon public works, and the further fact that many laborers are required to labor for an excessive number of hours in one day without intermission to the material injury of their constitutions and health, creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three days be, and the same is, hereby suspended; and that this Act take effect and be in force from and after its passage, and it is so enacted."

The complaint and information are drawn strictly in accordance with the Act prescribing the offense. And they go further and negative each and all of the exceptions mentioned in the law, and then aver that on or about September 9, 1914, in Bexar County, Texas, and continuously from said date until December 9, 1914, G. H. Bradford and C. O'Neil were the agents and employes of the Alamo Construction Company, a co-partnership and association of persons, composed of C. G. Sheely and said Bradford and divers other persons whose names are unknown and can not be set out, had an employment and a contract with said Bexar County for the purpose of constructing a bridge known as the Borregas bridge on the Borregas road across the San Antonio River, the construction of which required the services of laborers, workmen and mechanics; and that said Bradford and O'Neil, agents and employes of said co-partnership, and association, did then and there unlawfully require and permit several persons, viz., J. A. Crawford, a mechanic, and others, naming them, being laborers, to work more than eight hours per calendar day in constructing said bridge. And then, as stated, negativing that such work was being done in case of any of the emergencies stated in the law. And, further, that at the time of the taking effect of said Act, said contract for the construction of such bridge was not in existence, and that neither of the said laborers, naming them, were State or county convicts and not serving sentences as such.

We will here state substantially all of the grounds upon which appellants contest the validity of said law. They are: (1) That it is unconstitutional in that it attempts to abridge the right of contract between employe and contractor, and denies the employe the right to sell his labor as he desires under section 19, article 1, of our Constitution; (2) that its uncertainty and indefiniteness as to the emergencies provided for in the Act render it void; (3) because the title of the Act does not mention contractors, or persons doing work under a contract, as required by section 35, article 3, of the Constitution; and (4) that the complaint and information are insufficient in that the said Act of

the Legislature attempts only to create an offense when work is being done by, or on behalf of, the State, or said respective political subdivisions, and that they nowhere are charged with doing work by, or on behalf of, the State,. or any political subdivision.

In our opinion, neither of his contentions is sound.

We think it unnecessary to enter into any extended discussion of the various questions raised. The said Act of the Legislature bears indisputable evidence on its face that it followed substantially, if not literally, both the Act of the Legislature of Kansas of 1891, chapter 114, of that State, and of the Act of Congress of August 1, 1892, chapter 352; 27 Stat. at L., 340; U. S. Comp. Stat., 1901, p. 2521.

The said Kansas Act was sustained as constitutional by the Supreme Court of Kansas in State v. Atkin, 64 Kan., 174, 67 Pac. Rep., 519; and see also Ex rel. Dalton, 61 Kan., 257, 47 L. R. A., 380, 59 Pac. Rep., 336. The said Dalton case, supra, was taken to the Supreme Court of the United States, and the Kansas Act fully sustained by the United States Supreme Court as in no way violating any provision of the United States Constitution. Atkin v. Kansas, 191 U. S., 207, 48 L. Ed., 148.

The said Act of Congress was modeled after, and substantially as to the United States, the same as said Kansas Act was applicable to that State. The United States Supreme Court, in Ellis v. United States, 206 U. S., 246, 51 L. Ed., 1047, fully sustained the said congressional Act as constitutional under the Constitution of the United States.

In 1 State and Federal Control of Persons and Property, Tiedeman, page 338, it is said: "Another common form of statutory regulation of the hours of labor, is the provision that workmen on public works shall not be required to work more than the prescribed number of hours per day. Where the regulation is applied to the employes of the city, county, or State government, who are employed and paid directly by these respective governments, the constitutionality of the regulation can not be questioned; for the reason that these respective governments, in enforcing such a regulation, are only exercising the general right of a party to a contract to insist on a certain provision in the contract of hiring. And it would seem also to be rational to uphold the regulation as a constitutional exercise of authority, when it is applied to those laborers who are engaged on public works in the employ of contractors to whom the work has been let on contract, if the contract has been let after the enactment of the regulation. The requirement as to the hours of labor is properly considered as entering into and becoming a part of the contract between the government and the contractor.  .  .  ."

The title to the Act herein attacked is, "An Act prescribing and fixing the number of hours that shall constitute a legal day's work on all work performed by or on behalf of the State of Texas, or by or on behalf of any county, municipality, or other legal or political

subdivision of said State; providing for cases of emergency; prescribing penalties for its violation"; and expressly repealing a certain previous Act, designating it; "and declaring an emergency." We think it clear and certain that this title comprehended and embraced every provision of the said Act of the Legislature contained therein, and that it in no way violates section 35, article 3, of our Constitution, which requires that no bill shall contain more than one subject, which shall be expressed in the title. Mr. Harris, in his Texas Constitution, page 250 et seq., collates a large number of the decisions of this and the Supreme Court under said article of the Constitution, and not one of them is authority for holding the said Act unconstitutional.

We think there can be no question but that the said Act and the complaint and information herein embrace the appellants by its allegations. We have recited them above. It is unnecessary to repeat that.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### December 15, 1915.

PRENDERGAST, Presiding Judge.—In the original opinion we gave the substance of the eight-hour labor law passed by the Thirty-third Legislature, page 127, but in order to further discuss appellants' contentions in their motion for rehearing we will restate some of them.

The first section of the law clearly prescribes that eight hours shall constitute a day's work for all laborers, when employed by or *on behalf* of the State or county in the construction of any bridge, or other public improvement. The object and purpose of the law is stated in section 5, quoted in the original opinion, but succinctly restated is, "the fact that many laborers are required to labor for an excessive number of hours in one day without intermission, to the material injury of their constitutions and health," thus making the health and constitutions of laborers—citizens of the State—above and superior to the dollars which their employers might make out of them and their labor by requiring or permitting them to work, or they voluntarily working "an excessive number of hours in one day without intermission"—a most salutary and humane law. Then, in order that no contractor, for constructing such public improvements, could be taken unawares, the first part of section 2 requires that all contracts in future by or on behalf of the State or county for constructing any of said public improvements, "shall be deemed and considered as made upon the basis of eight hours constituting a day's work." Then section 2 continues: "It shall be unlawful for any corporation, person or association of persons having a contract with the State, or any political subdivision thereof, to require or permit any such laborers to work more than eight house per calendar day in doing such work, except in case of emergency." The excepted emergencies are quoted in the original opinion. Section 3 prescribes the offense. So far as this case is concerned, it is:

"Any person, . . . or any agent or employe of any person, . . . or association of persons, . . . who shall fail or refuse to comply with the provisions of this Act, or who shall violate any of the provisions of this Act, shall, on conviction thereof" be punished as prescribed in the latter part of this section.

We know of no constitutional provision of our own Constitution, or of the Constitution of the United States, nor of any decision in our State, or by the United States Supreme Court, which directly or indirectly inhibits the Legislature from passing a law, under its unquestioned police power, to protect the lives, and constitution and health of its citizens. In fact, it would be the imperative duty of the Legislature, if the necessity arose, to enact such legislation. This eight-hour law, as it shows on its face, was enacted for such purposes and under such necessity, as to show it is in no way void or unconstitutional, even if it incidentally curtails or abridges the right, under the circumstances as enacted, of an employer and employe ordinarily privately and personally contracting in the particulars prohibited. Their private and personal right, if so, must yield to the necessary and imperative public good.

Neither is the Act void for uncertainty or indefiniteness because of the generalities of the emergencies, which authorize laborers to work more than eight hours. Such exceptions and emergencies must necessarily be stated in general terms. It would be interminable and unreasonable if the Legislature had to incorporate specifically each and every such emergency, in order to enact a valid law. And, if such was the case, an ingenious accused might, when prosecuted, or his attorney, think of some other emergency not thought of and included by the Legislature, and thereby render void the Act. While these exact exceptions or emergencies may not have been passed on by this and other courts, yet, similar general ones in other statutes have been, and the courts have uniformly sustained the validity of such Acts against just such contentions as appellants make herein.

We will cite some of them. Our Penal Code, under articles 46-47, in prescribing that a person is guilty of no offense when laboring under a mistake of fact, prescribes: "And it must also be such mistake as does not arise from a want of proper care on the part of the person committing the offense." In Watson v. State, 13 Texas Crim. App., 81, this court, as to the words of said article quoted, among other things, said:

"We think the learned judge should have given in charge to the jury, substantially, the above articles, leaving the jury to determine from the evidence in the case whether or not, under all the facts and circumstances of that particular case, the mistake of the defendant, if he was mistaken, arose from a want of proper care on his part. The question as to proper care, we think, depends upon the facts in each particular case. No general rule can be prescribed in relation to it. What would be proper care in one case might be gross negligence in another. What

would be proper care when considered with reference to one individual might not be when applied to another."

To the same effect is the decision in Hailes v. State, 15 Texas Crim. App., 93.

Again, our statute (P. C., arts. 1114 and 1117) in defining negligent homicide, says that, if any person in the performance of a lawful act shall, by negligence and carelessness, cause the death of another, he is guilty, etc. And says, the degree of care and caution is such as a man of ordinary prudence would use under like circumstances. In Morris v. State, 35 Texas Crim. Rep., 313, complaint was made that the trial judge failed to tell the jury what was and what was not negligence. As to this the court said: "There was no error on the part of the court in failing to further define 'negligence' than as given in the main charge. The charge of the court is in the following language: 'The degree of care and caution required to avoid danger is such as a man of ordinary prudence would have used under like circumstances.' This was in accordance with the language of the statute ·on the subject, and is in consonance with the ordinary definition of negligence." See also Baskins v. State, 75 Texas Crim. Rep., 537, 171 S. W. Rep., 727, where we discussed and gave further illustrations ·that are applicable herein.

The United States Congress, by the Act of March 4, 1907, c. 2939, ·sec. 2 (34 Stat., 1416; U. S. Comp. St., 1913, sec. 8678) enacted: "Telegraph operators, train dispatchers, etc., are not permitted to serve :more than nine hours in the twenty-four-hour period in offices operated ·continuously night and day, or thirteen hours in offices operated only ·during daytime, *except in case of emergency,* when the employes named may be permitted to be and remain on duty for four additional hours, etc." In the case of B. & O. Ry. Co. v. I. C. C., 221 U. S., 612 (31 Sup. Ct., 621, 55 L. Ed., 878) the above words contained in the statute, ·"except in case of emergency," were vigorously assailed as so uncertain as to render the statute void. The Supreme Court held that such words did not render the statute void, saying that the argument claiming that these words rendered the law invalid "denies to the Legislature the power to use a generic description, and, if pressed to its logical conclusion, would practically nullify the legislative authority by making it essential that legislation should define without the use of generic terms all the specific instances to be brought within it. In a legal sense, there is no uncertainty. Congress by an appropriate description of an exceptional class has established a standard with respect to which cases that arise must be adjudged."

See also State v. I. & G. N. Ry. Co., 179 S. W. Rep., 867, where ·our Supreme Court discusses fully this question and cites the decisions of this State and of the United States Supreme Court, wherein such general exceptions or emergencies, as in this case, were uniformly sustained as against such complaints as appellants make in this case. We think it clear that the exceptions or emergencies stated in the Act in · .no way render the law invalid or .void.

We also think it clear that the complaint and information in this case properly charge an offense under said Act, and that appellants' contention that the pleading is insufficient because it does not charge that the appellants were doing the work themselves on behalf of the county, nor the work they were doing, was not done by them directly by or on behalf of Bexar County is untenable. The complaint and information plainly allege, among other things, that the Alamo Construction Company, a co-partnership and association of persons composed of C. G. Shelly and G. H. Bradford (who is one of the appellants) and divers other unknown persons, had employment and a contract with Bexar County to construct for said county a certain bridge therein, describing its location, requiring the services of laborers, etc., and that G. H. Bradford and C. O'Neil (appellants) were the agents and employes of said construction company, and that they did then and there unlawfully require and permit certain persons, naming them, to work more than eight hours per calendar day in constructing said bridge, then alleges such work was not done under any of the emergencies or exceptions named in the Act. It is thus seen that Mr. Bradford was one of the contractors himself, but that in requiring and permitting the laborers to work more than eight hours per day, he and the other appellant, O'Neil, were acting as the agents and employes of all the other contractors under the name of said construction company. The law was so framed as to embrace not only the contractor himself who directly contracts with the county, but also, "any person" and the "agent or employe of any person, who shall fail or refuse to comply with the provisions of this Act"—not only so, but any person, agent or employe of any person, "who shall violate any of the provisions of this Act," shall, on conviction, etc., be punished. The law, no doubt, purposely embraced not only the contractor himself but also any person or the agent or employe of any person, who had a contract with the county, to do such work, from requiring or permitting laborers to work more than eight hours so as to prevent any evasion of the clear intent of the law. If it had not done so, all any contractor would have to do to evade the law and the intent thereof, would be to get a contract from the county, then employ an agent or give some employe authority, who would require or permit the laborer to work longer than eight hours, and that, too, notwithstanding he had made his contract upon the basis of eight hours for a day's labor under section 2 of the Act. The information is valid and charges an offense under the law.

The motion for rehearing is overruled.

*Overruled.*