447 S.W.2d 225 (1969)
E. S. G., Appellant,
v.
The STATE of Texas, Appellee.
No. 14749.
Court of Civil Appeals of Texas, San Antonio.
October 22, 1969.
Rehearing Denied November 19, 1969.
John L. Sanders, Harry B. Adams, III, San Antonio, for appellant.
James E. Barlow, Sparta Bitsis, San Antonio, for appellee.
BARROW, Chief Justice.
Appellant, a girl fourteen years of age, was adjudged delinquent by the Juvenile Court of Bexar County after a non-jury *226 trial and committed to the custody of the Texas Youth Council for an indefinite term not extending beyond her twenty-first birthday, in accordance with the provisions of the Texas Juvenile Act, Art. 2338-1, Vernon's Ann.Civ.St. She is presently confined in the State Training School for Girls.
The finding of delinquency is based on Sec. 3(f) of said Act, which defines a delinquent child as one who "habitually so deports himself as to injure or endanger the morals or health of himself or others." The question presented here is whether this portion of the statute is unconstitutionally vague. No question is presented as to the fairness of the trial, the adequacy of the evidence, or whether the essentials of due process were observed. Cf. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527; Leach v. State, 428 S.W.2d 817 (Tex.Civ. App.Houston (14th) 1968, no writ).
This case was originally drawn by Justice Cadena, and while we find no disagreement with the exhaustive and scholarly presentation of the problem raised by the "void for vagueness" doctrine as set forth in his opinion,[1] we disagree with his conclusion that Sec. 3(f), supra, is unconstitutional. Accordingly, this opinion is filed as the majority opinion of this Court.
The relatively comprehensive word "morals" is one which conveys concrete impressions to the ordinary person. Such word is in constant use in popular parlance, and this word or words of similar import are used in the statutes of most States to define behavior illegal for a child. In thirty-three States a child can be found delinquent if he is guilty of immoral conduct, and the various States' definitions of immoral conduct are all somewhat similar to Sec. 3(f). See XXI Baylor Law Review 352, 358; Sussman, Law of Juvenile Delinquency, Ch. II. The obvious reason for granting such broad and general jurisdiction is seen when one makes even a cursory attempt to define all the types and patterns of behavior and conduct injurious to a child. The need to correct habits and patterns of behavior which are injurious to the health or morals of the child goes to the very heart of our Juvenile Act. The judge in this case observed that most girls who came before said court were charged with violation of this section.
It is not questioned that appellant was engaged in a course of conduct injurious to her morals, if not her health. Nor could it be questioned that this fourteen-year-old girl understood that such conduct was injurious to her morals. Even her attorney recognized that her parents had lost control and that the girl desperately needed supervision. She was gone from her home for days at a time and lived with a girl reputed by appellant's mother to be a prostitute. Appellant and this girl hung around the Greyhound Bus Station and other public places. She was brought before the Juvenile Court after her mother had located her in a downtown transient apartment with a young adult male. She had been gone from home for over a week on this occasion, and when apprehended by her mother and a policeman she was only partially dressed. This case history illustrates the need for a provision such as found in Sec. 3(f), supra.
The use of words such as "morals" is not confined to our Juvenile Act. In Lowe v. Texas Liquor Control Board, 255 S.W.2d 252 (Tex.Civ.App.Amarillo 1952, *227 no writ), the Court rejected a charge that Art. 666-12(6), Vernon's Ann.P.C., was vague and indefinite although it contained similar type words. The Court said: "[These] terms (general welfare, health, peace, morals and safety of the people, and sense of decency) have a well-accepted and understood meaning." Other States have reached a similar result. In People v. Deibert, 117 Cal.App.2d 410, 256 P.2d 355, 1953, defendant was convicted of contributing to the delinquency of a minor, that is of encouraging the minor to lead an "idle, dissolute or immoral life." The Court rejected a contention that the statute was too vague, indefinite and uncertain to form the basis of a criminal charge and hence invalid under the due process clause of the Constitution. In doing so it said: "The use of words of general meaning is the essence of our code system. Thus, in a sphere so vital to the community as the welfare of its youth, the words used in a statute designed to enable the Legislature to come to grips effectively with the problems of juvenile delinquency should be upheld where their frequent use in penal statutes gives assurance that they are understood by men of ordinary intelligence." See also United States v. Meyers, 16 Alaska 368, 143 F.Supp. 1 (1956).
It is conceded that Sec. 3(f), supra, defines a delinquent child in general terms. However, the petition filed under same must allege the specific acts or conduct which brings the child within the prohibited behavior. Viall v. State, 423 S.W. 2d 186 (Tex.Civ.App.Amarillo 1967, no writ); Cantu v. State, 207 S.W.2d 901 (Tex.Civ.App.San Antonio 1948, no writ). This protects the rights of the child in the adjudicatory stage of the proceedings. We do not believe that the section in question is unconstitutionally vague.
Appellant also urges that the trial court erred in not requiring the State to prove its allegations beyond a reasonable doubt. Actually, the court found only that "the evidence is sufficient," and refused to state the test that it applied. Since submission of this cause, the Supreme Court in State v. Santana, 444 S.W.2d 614 (July 23, 1969), has held that the "beyond a reasonable doubt" test is not required under the Juvenile Act. Therefore, appellant's point is without merit even if we assume that the Juvenile Court found appellant delinquent by applying the "preponderance of evidence" test.
The judgment is affirmed.
CADENA, Justice (dissenting).
The Texas Juvenile Act,[1] is typical of almost every statute on the subject in that, after defining the term "delinquent child" in rather specific language relating to conduct violative of penal statutes and ordinances,[2] it vests broad discretion in the Juvenile Court by extending the definition to include any child who "habitually so deports himself as to injure or endanger the morals or health of himself or others"[3] or who "habitually associates with vicious and immoral persons."[4] In this case, the petition filed by the State alleged that appellant had habitually so conducted herself as to endanger "the morals or health of herself and others," without specifying whether the facts alleged in the petition constituted a threat to appellant's morals or health, or to the morals or health of others.
Despite some indications to the contrary,[4] the Supreme Court of the United States has explicitly refused to limit the *228 application of the "void for vagueness" doctrine to criminal cases.[5]
Rather than relying on differences in nomenclature and the civil-criminal dichotomy,[6] it would be a sounder approach to attach significance to the seriousness of the matter which is at stake in determining whether the statute will survive a vagueness attack.[7] Under our statute a child of ten may be deprived of his liberty for a period of eleven years. Appellant here faces confinement for almost seven years. To insist on greater definiteness in a statute imposing a $5.00 fine than in one imposing such confinement as a sanction, and to defend such distinction on the ground that the statute imposing the fine is a criminal enactment while the statute imposing the confinement is civil in nature, is to ignore reality.
The vagueness doctrine requires that a statute be sufficiently clear to give notice of the conduct required or prohibited to those whose activity the statute attempts to regulate. A judgment that a particular statute does not provide the required certainty or definiteness is seldom, if ever, a completely objective conclusion.[8] What is uncertain today may have been certain yesterday and may be certain again tomorrow. What is uncertain to one judge may be certain to another, and what is uncertain to one judge in one area of the law may be certain to the same judge as to another subject matter.
Unfortunately, the decisions which speak of vagueness do so in vague terms which are the source of counter-sounding quotations. Thus, we are told that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process * * *."[9] On the other *229 hand, it is a fact, as Mr. Justice Holmes observed, that "the law is full of instances where a man's fate depends on his estimating rightly * * * some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment * * *, he may incur the penalty of death."[10]
The vagueness doctrine, of course, creates practical difficulties. Although speaking in dissent, Mr. Justice Frankfurter has well articulated the resulting legislative problem:
"In these matters, legislatures are confronted with a dilemma. If a law is framed with narrow particularity, too easy opportunities are afforded to nullify the purpose of the legislation. If the legislation is drafted in terms so vague that no ascertainable line is drawn in advance between innocent and condemned conduct, the purpose of the legislation cannot be enforced because no purpose is defined. * * * The reconciliation of these two contradictories is necessarily an empirical enterprise largely depending on the nature of the particular legislative problem.
"What risks do the innocent run of being caught in a net not designed for them? How important is the policy of the legislation, so that those who really like to pursue innocent conduct are not likely to be caught unaware? How easy is it to be explicitly particular? How necessary is it to leave a somewhat penumbral margin but sufficiently revealed by what is condemned to those who do not want to sail close to the shore of questionable conduct? These and like questions confront legislative draftsmen. Answers to these questions are not to be found in any legislative manual * * *. They are not to be found in the opinions of this Court. * * *."[11]
Appellant here was found guilty of "habitually" engaging in conduct calculated to "injure" or "endanger" the "morals" or "health" of herself or of others. The principal source of uncertainty in the statute probably results from the use of the word "morals," a term involving an appeal to judgment and requiring determination of questions of degree, although, perhaps to a lesser extent, the words "habitually," "injure" and "danger" are also classifiable as ductile terms.[12] The difficulty with terms such as "morals" is that they have no external "object-referent."
Where the equilibrium between the individual's claim of freedom and society's demands upon him is left to be struck ad hoc on the basis of subjective evaluations, the case law furnishes no reliable guide to the application of the requirement of definiteness.[13]
*230 In Lowe v. Texas Liquor Control Board, 255 S.W.2d 252, 257 (Tex.Civ.App. Amarillo 1952, no writ), it was held that a statute which provided for cancellation of a permit to sell intoxicating liquors if the manner in which the permittee conducted his business "is of such a nature, which, based on the general welfare, health, peace, morals and safety of the people and on the public sense of decency, warrants the cancellation or suspension of the permit," was not vague and indefinite. The language of the Court is interesting: "Conduct which is contrary to these terms is recognized by all; conduct which does not comport with these terms is shocking to the finer sensibilities of all men." Although the Court insisted that the words used in the statute "have a well-accepted and understood meaning," the Court could do no better than to say that the terms, "Simply defined, [they] condemn any conduct which is opposed to the peace and detrimental to the welfare of the community." Despite the Court's assurance that the nebulous terms employed in the statute were well understood by all, the Court obviously found it impossible to define the terms except by substituting terms at least equally vague and all-encompassing. Even the most careful study of the Lowe opinion reveals nothing about the meaning of the statutory language beyond the fact that the Court felt that the bribing of public officials constitutes conduct which, "based on the general welfare, health, peace, morals and safety of the people and on the public sense of decency, warrants the cancellation or suspension" of a permit to sell intoxicants. It is completely impossible to derive, from a reading of Lowe, any further insight into the meaning of the statutory terms. Terms which really have a "well accepted and understood meaning" should, it would seem, be susceptible to more precise definition than that offered in Lowe.
In any event, the sanction imposed by the statute in Lowe was merely cancellation of a liquor license. A liquor license has been traditionally viewed as no more than a temporary privilege which is neither a right of property nor a contractual right.[14] The loss of such a privilege is in no way comparable to the loss of personal liberty which our juvenile law imposes on children by ordering their confinement in public institutions.
In United States v. Meyers, 16 Alaska 368, 143 F.Supp. 1 (D.C.Alaska, 1956), the statute defined a delinquent child as "any child under the age of eighteen years * * * who is in danger of becoming or remaining a person who leads an idle, dissolute, lewd or immoral life * * * or who is guilty of or takes part in or submits to any immoral act or conduct * *." To the contention that the statute was unconstitutionally vague, the Court simply answered that the meaning of the statute was "perfectly clear." Understandably, the Court thought it unnecessary to attempt a definition of language which was "perfectly clear."
*231 Lowe and Meyer are typical of many cases upholding statutes against vagueness attacks. The consistent failure of courts to attempt to define language of the type now before us merely points up the fact that such language has no objective meaning in the sense of contrast with merely individual opinion or preference. If a statute is, in reality, not vague, the result would be that, after the decision in the particular case, the statute is sufficiently clear and precise to enable men of common intelligence and understanding to determine what is prohibited and what is permissible. Neither the opinion in this case, nor those in cases such as Lowe and Meyer, satisfy this test. It is no answer to a vagueness attack to say that language is definite and certain while confessing a complete inability to express what the language means.
In any event, cases where judges profess to understand perfectly the meaning of such terms as "morals" are instances where the statutory language is directed to adults. Here, a directive addressed to children is couched in terms which have been the source of controversy among theologians, philosophers and judges for centuries. It is one thing to say that a judge, drawing upon his experience and knowledge of the law and of "meanings" attached to nebulous terms at common law, should understand what is moral and what is not. It is another thing to expect a child of ten or, as in this case, of fourteen, to understand the meaning of words which judges are unable to define while assuring us that the language is "perfectly clear."
The persuasiveness of Meyer as a precedent is seriously diluted by the decisions holding that definitions of a vagrant as a person "leading an idle, immoral or profligate course of life" are unconstitutionally vague.[15]
The application of less strict constitutional standards to juvenile proceedings has sometimes been justified by distinguishing between proceedings, such as criminal cases, where the adjudication relates to past conduct, and those cases, such as juvenile cases, where the purpose of the inquiry is to determine a present or future condition. The distinction is, at best, illusory. All conduct determinations can be, by the careful choice of language, transformed into condition determinations. The inquiry can always be focused, not on the defendant's past conduct, but on a condition of which such misdeeds are probative. The danger in resting a particular decision on the conduct-condition dichotomy is that a court can achieve a result substantially the same as that flowing from the criminal-civil distinction rejected in Gault.
Furthermore, the distinction between proceedings aimed at adjudicating past conduct and those aimed at determining present or future condition, even if defensible as something more than an ingenious play on words, does not explain the results reached by the cases. The vagrancy statutes have been struck down for vagueness even though the so-called crime of vagrancy deals with a person's condition or state of being, rather than with a person's actions or failure to act.[16]
The provision on which the State relies in this case is typically vague and all-encompassing, especially when administered with the informality which is typical of the juvenile court. It establishes the judge or jury as the arbiter of the behavior and morals of every child. The situation is ripe for overreaching, for imposition of the judge's or jury's own code of youthful conduct. Such provisions easily become a means of enforcing conformity. *232 For example, today, most adults seem to associate long hair with immoral conduct, except, perhaps, in the case of their own children, in which instance it is regarded as nothing more than an unsettling and transitory adolescent foible. The provision in question is vague enough to allow almost any child, given compromising circumstances, to be caught up in the jurisdictional net of the juvenile court.
Provisions such as those found in Section 3(f) lack a common meaning; they are not derived from fixed, or even reasonably fixed, criteria; they allow labelling a child as a "delinquent" even where it is clear that his actions are reasonably normal responses to highly provocative or intolerable situations. The statute, lacking reasonable standards, is "susceptible of sweeping and improper application,"[17] and it furnishes a convenient tool for use against particular persons or groups who incur official displeasure.[18] Nor is there any overriding need for such vagueness. In the case of appellant, a sufficiently clear warning could have been formulated by the Legislature without calling in the English faculty of a university. All that had to be done was to state that a child who ran away from home was in need of the State's "protection." Such direct statutory language would authorize the commitment of more than a majority of the girls who have been committed to a state training school.[19]
Our Legislature, perhaps, has the power to make the jurisdiction of the juvenile court depend upon unexamined assumptions that certain conduct is a precursor to delinquency. I do not accept the explanation that we cannot adequately protect our youth without vesting the courts with power to make their findings of jurisdiction dependent on subjective definitions.
I would reverse the judgment below.
NOTES
[1] It is significant that the United States Supreme Court has used the doctrine of unconstitutional vagueness almost exclusively to protect encroachment upon freedoms protected by the Bill of Rights, and even in this area the strict application of the doctrine is limited to cases where the statute has "a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser." Smith v. California, 361 U.S. 147, 150-151, 80 S.Ct. 215, 218, 4 L.Ed.2d 205 (1959); University of Pennsylvania Law Review, The Void-for-Vagueness Doctrine, Vol. 109, 67, 75.
[1] Tex.Rev.Civ.Stat.Ann., Article 2338-1.
[2] Article 2338-1, Sec. 3, pars. (a), (b), (c), (d) and (e).
[3] Article 2338-1, Sec. 3(f).
[4] E. g., Levy Leasing Co. v. Siegel, 258 U.S. 242, 250, 42 S.Ct. 289, 292, 66 L.Ed. 595 (1922), where Mr. Justice Clark distinguished a prior case holding a statute unconstitutionally vague by simply stating that the previous decision, "dealing with definitions of crime, is not applicable."
[5] Small Co. v. American Sugar Refining Co., 267 U.S. 233, 239, 45 S.Ct. 295, 69 L.Ed. 589 (1925).
[6] There is grave doubt that a decision in a juvenile case can be defended by a simple pronouncement that the proceedings are "civil" in nature. The United States Supreme Court has refused to be bound by legislative and judicial conclusions that juvenile proceedings are civil in nature, and will ignore the "feeble enticement of the `civil' label-of-convenience." Matter of Application of Gault, 387 U.S. 1, 50, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967). Significantly, in Gault, only Mr. Justice Stewart, in dissent, accepted unquestioningly the notion that juvenile proceedings are shielded from the reach of constitutional provisions because the proceedings are civil proceedings. In any event, at the very least, the juvenile statute "is penal in its effect for the court may commit the child to a public institution until the child reaches the age of twenty-one years." Justice Johnson, concurring, in Leach v. State, 428 S.W. 2d 817, 822 (Tex.Civ.App.Houston, 14th Dist., 1968, no writ.)
[7] "Despite the fact that this is not a criminal statute, we shall nevertheless examine the application of the vagueness doctrine to this case. We do this in view of the grave nature of deportation. The Court has stated that `deportation is a drastic measure * * *.' We shall, therefore, test this statute under the established criteria of the `void for vagueness' doctrine." Jordan v. De George, 341 U.S. 223, 231, 71 S.Ct. 703, 707-708, 95 L.Ed. 886 (1951).
[8] Mr. Justice Frankfurter, dissenting in Winters v. New York, 333 U.S. 507, 524, 68 S.Ct. 665, 674, 92 L.Ed. 840 (1948), has pointed out that "indefiniteness is not a quantitative concept. It is not even a technical concept of definite components. It is itself an indefinite concept. There is no such thing as indefiniteness in the abstract, by which the sufficiency of the requirement expressed by the term may be ascertained. The requirement is fair notice that conduct may entail punishment. But whether notice is or is not `fair' depends upon the subject matter to which it relates."
[9] Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 128, 70 L.Ed. 322 (1926). The statute involved in Connally proscribed the payment to laborers of "less than the current rate of per diem wages in the locality where the work is performed." In holding the statute unconstitutionally vague, the Court seemingly overlooked the fact that it had earlier upheld an almost identical statute. Atkin v. Kansas, 191 U.S. 207, 24 S.Ct. 124, 48 L.Ed. 148.
[10] Nash v. United States, 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232 (1913).
[11] Winters v. New York, 333 U.S. 507, 525-526, 68 S.Ct. 665, 675, 92 L.Ed. 840 (1948).
[12] One writer has distinguished three grades of certainty in statutes: precisely measured terms; abstrations of common certainty; and terms involving an appeal to judgment or questions of degree. Freund, The Use of Indefinite Terms in Statutes, 30 Yale L.J. 437 (1921).
[13] "Unreasonable charges" was held too vague in United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045 (1921). "Unreasonable profits," according to the opinion in Cline v. Frink Dairy Co., 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146, furnished no definite standard of conduct. "Real price" was held too vague in International Harvester Co. v. Kentucky, 234 U.S. 589, 34 S.Ct. 944, 58 L.Ed. 1479 (1914). In Herndon v. Lowry, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937), the Supreme Court held the phrase "reasonable time" lacked the requisite definiteness. "Sacrilegious" was held unconstitutionally vague in Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). Winters v. New York, 333 U.S. 507, 68 S.Ct. 665 (1948), condemned "so massed as to become vehicles for inciting." On the other hand, Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 upheld as sufficiently definite a requirement that a person do certain things "so far as practicable." The phrase, "in excess of the number of employees needed," was upheld in United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947). "Reasonable allowance" was held not unconstitutionally vague in United States v. Ragen, 314 U.S. 513, 62 S.Ct. 374, 86 L.Ed. 383 (1942). In Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), the Supreme Court held that a federal statute prohibiting the mailing of material that is "obscene, lewd, lascivious, or filthy * * * or other publication of an indecent character," did not fail to give proper notice of the conduct prohibited.
[14] 48 C.J.S. Intoxicating Liquors § 99, p. 223.
[15] Goldman v. Knecht, 295 F.Supp. 897, 905 (D.C.Colo., 1969). In recent years, the nebulous, open-ended, dragnet character of vagrancy statutes has been severely criticized. See authorities cited in Goldman, 295 F.Supp. at 904, n. 21.
[16] Lacey, Vagrancy and Other Crimes of Personal Condition, 66 Harv.L.Rev. 1203, 1204 (1953).
[17] N. A. A. C. P. v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).
[18] Thornhill v. Alabama, 310 U.S. 88, 97-98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).
[19] Barrett, `Delinquent Child': A Legal Term Without Meaning, 21 Baylor L.Rev. 352, 354-355 (1969).