William P. GOODE, Appellant,

v.

CITY OF DALLAS, Appellee.

No. 19187.

Court of Civil Appeals of Texas, Dallas.

June 15, 1977.

Tom S. McCorkle, Jr., McCorkle & Westerburg, Dallas, for appellant.

Richard Sacks, Asst. City Atty., Dallas, for appellee.

GUITTARD, Chief Justice.

The principal question on this appeal is the validity of the comprehensive zoning ordinance of the City of Dallas insofar as it prohibits storage of motor vehicles on property within a residential district when that storage is not incidental to the use of the property as a residence. The landowner, William P. Goode, sued the City for a judicial declaration that the ordinance is unconstitutional and for an injunction restraining its enforcement by criminal and civil proceedings. The City counterclaimed for a

permanent injunction restraining violation of the ordinance. After trial without a jury, the district court upheld the ordinance, denied the landowner's claim for declaratory and injunctive relief, and issued the injunction sought by the City. We affirm.

### 1. *Validity of Ordinance*

The landowner contends that the ordinance fails to define an offense and that it is so vague that a person of ordinary intelligence cannot determine when it has been violated. The particular provision now in question is section 24–202, as follows:

In all single-family, duplex, townhouse, multiple-family and mobile home districts no open accessory storage or display outside a building of materials or commodities for sale at wholesale or retail or for storage purposes shall be permitted *nor shall any motor vehicle* or machinery *storage other than that which is incidental to the use of a premises as herein provided for be permitted,* except that one (1) panel delivery or pick-up truck not exceeding one and one-half (1½) ton capacity may be stored by the owner of a premises when such vehicle storage is incidental to the main use of such premises [emphasis added].

The penal provision of the ordinance is section 35–100, as follows:

Any person or corporation who shall violate any of the provisions of this ordinance or fail to comply therewith or with any of the requirements thereof, or who shall build or alter any building or use in violation of any detailed statement or plan submitted and approved hereunder, shall be guilty of a misdemeanor and shall be liable to a fine of not more than two hundred dollars ($200.00) and each day such violation shall be permitted to exist shall constitute a separate offense. The owner or owners of any building or premises or part thereof, where anything in violation of this ordinance shall be placed or shall exist, . . . shall be guilty of a separate offense and upon conviction shall be fined as herein provid-

ed. The City, likewise shall have the power to enforce the provisions of this ordinance through civil court action as provided by State Law.

The landowner argues that section 35–100 is not sufficient in itself to define an offense and is insufficient also when taken together with section 24–202 because that section merely states that the conduct referred to is not permitted without expressly stating that a person who commits such conduct is guilty of an offense.

■ We do not agree. In our opinion, section 35–100, when taken together with section 24–202, is sufficient to advise anyone of ordinary intelligence that a person who engages in the conduct that is not permitted is guilty of an offense. Section 24–202 provides, in effect, that no storage of vehicles, with certain exceptions, shall be permitted in a residential district, and section 35–100 provides that any person who violates any provision of the ordinance shall be guilty of a misdemeanor and subject to a fine. The statement in section 24–202 that the conduct therein described is not permitted necessarily means that the conduct not permitted is a violation of the ordinance and that any person who violates the ordinance is guilty of an offense and subject to the penalties provided.

The landowner contends further that section 24–202 is unconstitutionally vague because of uncertainty of the language "other than that which is incidental to the use of a premises as herein provided for." He argues that a person of ordinary intelligence is unable to determine when storage of a vehicle is "incidental" to the permitted residential use and when it is not.

We conclude that the ordinance in question is not impermissibly vague in the light of the authorities concerning the certainty required of penal statutes. The recognized test is that formulated in *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926):

[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence

must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

A more recent statement of this test is found in *Boyce Motor Lines v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952), as follows:

A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.

■ In accordance with these statements, the Supreme Court has held that lack of precision is not in itself offensive to the requirement of due process since all that is required is a warning marking the boundaries of the proscribed conduct with sufficient distinctness for judges and juries fairly to administer the law. *Roth v. United States,* 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1957). Neither is a penal provision invalid because a person affected by it must make an estimate of some matter of degree. *Nash v. United States,* 229 U.S. 373, 33 S.Ct. 780, 781, 57 L.Ed. 1232 (1913).

Mr. Justice Holmes put it in *United States v. Wurzbach,* 280 U.S. 396, 399, 50 S.Ct. 167, 169 (1930), as follows:

Wherever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so, it is familiar to the criminal law to make him take the risk.

Since any statement of the test in general terms is necessarily somewhat vague, a more precise understanding may be attained only by examining its application to actual cases. Accordingly, we have reviewed a number of cases in which penal statutes have been attacked for vagueness in the Supreme Court of the United States. Statutes which have been upheld as against such attacks, in chronological order, include the following: a statute restricting hours of work of railroad workers "except in case of emergency,"[1] the Sherman Anti-Trust Act construed as forbidding only unreasonable restriction of competition,[2] a statute restricting solicitation of funds "for any political purpose,"[3] the Internal Revenue Act permitting deduction of "a reasonable allowance for salaries or other compensation for personal services actually rendered,"[4] imposition of the death penalty for kidnapping unless "the kidnapped person has been liberated unharmed,"[5] a statute forbidding coercion to employ persons "in excess of the number of employees needed,"[6] a regulation requiring drivers of motor vehicles transporting explosives to "avoid so far as practicable and where feasible, . . . driving into or through congested thoroughfares,"[7] mailing of material that is "obscene, lewd, lascivious, or filthy . . .

1. *Baltimore & O. R. v. Interstate Commerce Comm'n,* 221 U.S. 612, 31 S.Ct. 621, 625–26, 55 L.Ed. 878 (1911).

2. *Nash v. United States,* 229 U.S. 373, 33 S.Ct. 780, 781, 57 L.Ed. 1232 (1913).

3. *United States v. Wurzbach,* 280 U.S. 396, 50 S.Ct. 167, 169 (1930).

4. *United States v. Ragen,* 314 U.S. 513, 517, 62 S.Ct. 374, 375, 86 L.Ed. 383 (1942).

5. *Robinson v. United States,* 324 U.S. 282, 286, 65 S.Ct. 666, 668–69, 89 L.Ed. 944 (1945).

6. *United States v. Petrillo,* 332 U.S. 1, 7, 67 S.Ct. 1538, 1540–41, 91 L.Ed. 1877 (1947).

7. *Boyce Motor Lines v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 331, 96 L.Ed. 367 (1952).

or other publications of an indecent character,"[8] a statute describing an offense as "the crime against nature,"[9] a statute requiring disclosure of contributions and expenditures "for the purpose of influencing the nomination or election of candidates for federal office."[10]

Texas courts have applied the same test in upholding the following statutes: a statute limiting hours of work "except in case of emergency,"[11] a statute describing an offense as "rudely displaying any pistol or any other deadly weapon, so as to disturb the inhabitants of the place, in the prosecution of their lawful business,"[12] a "negligent homicide" statute;[13] a statute forbidding operation of vehicle with a defective muffler "causing excessive and unusual noise,"[14] a statute applying to persons "who customarily engage in the business of obtaining motor vehicles for scrap disposal or resale of parts therefrom or any other form of salvage,"[15] a statute forbidding use of a telephone with intent to harass "except if such call be for a lawful business purpose."[16]

We recognize that this test has not always been consistently applied by Texas courts. Thus a "reckless driving" statute[17] and a similar ordinance[18] have been held too indefinite, while a "negligent homicide"

statute has been upheld.[19] Sometimes statutes held void for vagueness appear to have been struck down on the ground that they are so broad as to include conduct which cannot constitutionally be prohibited, such as statutes against loitering[20] and vagrancy.[21] Many of the cases holding statutes void for vagueness had concerned enactments that infringed other constitutional guaranties, such as the right of free speech.[22] In the absence of such additional considerations, statutes defining an offense in broad or general language have usually been upheld as against attacks for vagueness unless they are so ambiguous as to leave determination of the legislative intent a matter of guesswork.[23]

■ Our review of the authorities has convinced us that the phrase "incidental to the use" in the ordinance now in question falls well within the bounds of reasonable certainty. A "motor vehicle" is a means of transportation, and if it is stored on a residential lot in order to provide transportation for the residents, such storage is "incidental" to the use of the property as a residence. Temporary inoperability of the vehicle would not establish that the storage is not "incidental" to the residential use and neither would the ownership of other vehicles providing alternative means of trans-

8. *Roth v. United States,* 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1957).

9. *Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).

10. *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 622, 46 L.Ed.2d 659 (1976).

11. *Bradford v. State,* 78 Tex.Cr. 285, 180 S.W. 702, 705 (1915).

12. *Ex parte Slawson,* 139 Tex.Cr. 607, 141 S.W.2d 609, 610 (1940).

13. *Pehl v. State,* 153 Tex.Cr. 553, 223 S.W.2d 238, 239 (1949).

14. *Ex parte Trafton,* 160 Tex.Cr. 407, 271 S.W.2d 814, 816–17 (1954); *Department of Public Safety v. Buck,* 256 S.W.2d 642, 646 (Tex.Civ.App.—Austin 1953, writ ref'd).

15. *Ex parte Rubin,* 362 S.W.2d 331, 332 (Tex. Cr.App.1962).

16. *Alobaidi v. State,* 433 S.W.2d 440, 441 (Tex. Cr.App.1968).

17. *Ex parte Chernosky,* 153 Tex.Cr.R. 52, 217 S.W.2d 673, 674 (1949).

18. *Ex parte Meadows,* 133 Tex.Cr.R. 292, 109 S.W.2d 1061 (1937).

19. *Dunn v. State,* 390 S.W.2d 775, 777 (Tex.Cr. App.1965); *Pehl v. State,* 153 Tex.Cr. 553, 223 S.W.2d 238, 239 (1949).

20. *Ex parte Mittelstaedt,* 164 Tex.Cr. 115, 297 S.W.2d 153, 155 (1957).

21. *Baker v. State,* 478 S.W.2d 445, 449 (Tex.Cr. App.1972).

22. *Note,* 109 U.Pa.L.Rev. 67, 75 (1960).

23. *See, e. g., Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

portation, so long as the occupant of the premises intends to use the vehicles in question for transportation.

■ Moreover, we need not consider the applicability of the ordinance in hypothetical extreme situations if its applicability to the case at hand is reasonably clear. *Roth v. United States,* 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1957); *United States v. Petrillo,* 332 U.S. 1, 7, 67 S.Ct. 1538, 1541, 91 L.Ed. 1877 (1947); *State v. Spartan's Industries,* 447 S.W.2d 407, 413 (Tex.1969). This principle appears to be the rationale for *E. S. G. v. State,* 447 S.W.2d 225, 226 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.) *appeal dism'd and cert. den.,* 398 U.S. 956, 90 S.Ct. 2171, 26 L.Ed.2d 540 (1970), in which the definition of a delinquent child as one who "habitually so deports himself as to injure or endanger the morals or health of himself or others" was held validly applied to a fourteen-year-old girl who unquestionably understood that her conduct was injurious to her morals.

■ We hold this principle to be applicable in the light of the evidence in this record. The landowner testified that he owns thirteen automobiles and two motorcycles, which he keeps on the premises as a hobby. He works on them and runs the motors from time to time, but he does not drive most of them on the streets. Some of them do not have current inspection stickers or license plates; some have not been moved for several years. This evidence justified the trial court's finding that the vehicles were stored on the premises and that such storage was not incidental to the permitted residential use. We conclude that a person of ordinary intelligence would have had no difficulty in determining that such storage of motor vehicles was a violation of the ordinance. Consequently, we hold that the ordinance is constitutional in its application to the facts of this case.

### 2. *Validity of Statute*

Another argument advanced by the landowner in support of his claim for injunction is that Texas Revised Civil Statutes Annotated article 1011h (Vernon 1963) is invalid. This statute provides:

The local legislative body may provide by ordinance for the enforcement of this Act and of any ordinance or regulation made thereunder. A violation of this Act or of such ordinance or regulation is hereby declared to be a misdemeanor, and such local legislative body may provide for the punishment thereof by fine or imprisonment or both. It is also empowered to provide civil penalties for such violation. . . .

The landowner attacks this statute on two grounds: first, that it is too vague in that a person of ordinary intelligence cannot determine when it has been violated; and second, that it attempts to empower a city to assess imprisonment as well as a fine for violation.

■ The vagueness argument is not well taken because, although the statute declares that any violation of a zoning ordinance is a misdemeanor, it should not be viewed as an attempt within itself to define all the elements of the offense. It is rather an enabling act which empowers a city to adopt a zoning ordinance and to define violations of such an ordinance as an offense. Although no conviction may be based on article 1011h alone, a conviction may be based on an ordinance authorized by article 1011h if such a violation is sufficiently described in the ordinance. Consequently, we hold that article 1011h is not subject to attack for vagueness.

■ Neither is the statute subject to attack here on the ground that the legislature cannot authorize municipal courts to impose the penalty of imprisonment. We need not consider whether a municipal court can be so authorized under the Texas Constitution because the ordinance in question does not attempt to impose that penalty. Section 35–100 makes no provision for imprisonment. The statute does not require the local legislative body to provide for both fine and imprisonment, but only authorizes imposition of punishment for violation of the ordinance "by fine or imprisonment or both." We hold that the provision in article

1011h for imprisonment is severable from the other provisions of the statute and, therefore, any constitutional problem in this connection would have no bearing on the validity of the provisions of the statute which empower cities to adopt zoning ordinances, define the violation of such an ordinance as a misdemeanor, and impose a fine as punishment.

### 3. *Opportunity for Administrative Relief*

 In his attack on the injunction granted to the City, the landowner contends that by filing a criminal complaint against him and also by filing the counterclaim for injunctive relief the City has prevented him from obtaining administrative relief from the Board of Adjustment by way of a variance from the requirements of the ordinance. He argues that since the Board has no criminal jurisdiction, a variance would not remove the criminal charges against him, and he insists that he should be permitted to pursue his administrative remedy before he is subjected either to criminal prosecution or to an injunction as sought by the City. We find no basis for this contention. The record shows that the City gave him ample notice and sufficient time to pursue any administrative remedy available. He testified that on May 14, 1976, he found a notice on his door from a city inspector. He telephoned the inspector, who advised him that he should have the cars moved. On June 11 he received a formal notice from the inspector stating: "You are hereby notified to discontinue the open storage of vehicles and vehicle parts. This use is not permitted in a residential area." Apparently he took no action in response to this notice. The next communication from the City was a "citation" dated July 7, 1976, which he received in the mail. It stated that a complaint would be filed charging him with the offense of "storage of vehicles on a residential lot," and notified him to appear for a hearing in municipal court on August 4. There is no evidence that such a criminal complaint was ever filed or that he was ever tried for the offense. His petition, which was filed on August 31, alleges that a trial in municipal court was then set for September 1.

From the landowner's own testimony, it appears to us that he had ample time to pursue any available administrative remedy before the criminal complaint was filed. Moreover, even after the filing of the complaint, if one was filed, he still would not have been precluded from seeking administrative relief. Of course, a variance granted by the Board of Adjustment would not exempt him from criminal penalties for past violations, but, if valid, it would protect him from prosecution on subsequent charges and might also be available as a defense to any civil action brought by the City. On the present record we hold that the City is not precluded from injunctive relief by any action that prevented the landowner from seeking relief from the Board of Adjustment.

Affirmed.

ROBERTSON, J., not sitting.