ACCEPTED
05-15-00279-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
8/3/2015 1:36:55 PM
LISA MATZ
CLERK

**NO. 05-15-00279-CR, NO. 05-15-00280-CR, NO. 05-15-00281-CR,
NO. 05-15-00282-CR, NO. 05-15-00283-CR, NO. 05-15-00284-CR,
NO. 05-15-00285-CR, NO. 05-15-00286-CR, NO. 05-15-00287-CR,
NO. 05-15-00288-CR, NO. 05-15-00289-CR, NO. 05-15-00290-CR,
NO. 05-15-00291-CR, NO. 05-15-00292-CR, NO. 05-15-00293-CR,
NO. 05-15-00294-CR, NO. 05-15-00295-CR, NO. 05-15-00296-CR,
NO. 05-15-00297-CR, NO. 05-15-00298-CR, NO. 05-15-00299-CR,
NO. 05-15-00300-CR, NO. 05-15-00301-CR, NO. 05-15-00302-CR,
NO. 05-15-00303-CR, NO. 05-15-00304-CR, NO. 05-15-00305-CR,
NO. 05-15-00306-CR, NO. 05-15-00307-CR, NO. 05-15-00308-CR,
NO. 05-15-00309-CR, NO. 05-15-00310-CR, NO. 05-15-00311-CR,
NO. 05-15-00312-CR, NO. 05-15-00313-CR, NO. 05-15-00314-CR,
NO. 05-15-00315-CR, NO. 05-15-00316-CR, NO. 05-15-00317-CR,
NO. 05-15-00318-CR, NO. 05-15-00319-CR, NO. 05-15-00320-CR,
NO. 05-15-00321-CR, NO. 05-15-00322-CR, NO. 05-15-00323-CR,
NO. 05-15-00324-CR, NO. 05-15-00325-CR, NO. 05-15-00326-CR,
NO. 05-15-00327-CR, NO. 05-15-00328-CR, NO. 05-15-00329-CR,
NO. 05-15-00330-CR, NO. 05-15-00331-CR**

5th COURT OF APPEALS
DALLAS, TEXAS
8/3/2015 1:36:55 PM
LISA MATZ
Clerk

---

**IN THE COURT OF APPEALS
FOR THE FIFTH JUDICIAL DISTRICT
OF TEXAS AT DALLAS**

---

**STATE OF TEXAS,**

*Appellant,*

vs.

**FARHAD NAYEB,**

*Appellee.*

---

**APPELLANT'S REPLY BRIEF**

---

**LARRY R. BOYD**
**State Bar No. 02775000**
**lboyd@abernathy-law.com**
**ABERNATHY ROEDER BOYD & HULLETT, P.C.**
**1700 Redbud Blvd., Suite 300**
**McKinney, Texas 75069**
**Telephone: (214) 544-4000**
**Telecopier: (214) 544-4040**

**SPECIAL PROSECUTOR FOR**
**THE STATE OF TEXAS**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.  **This Appeal Is Not Moot.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.  Nayeb's Incorrect Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.  The Mootness Definition is Not Met in This Case . . . . . . . . . . . . . . 2
    3.  Factors Demonstrating a Live Controversy . . . . . . . . . . . . . . . . . . . 3
        a.  The Need For a Determination of Constitutionality is
            Ripe in This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        b.  The CZO's Enforceability . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        c.  The Imposition of Mandated Fines . . . . . . . . . . . . . . . . . . . 6
    4.  The Alleged Request for an Advisory Opinion . . . . . . . . . . . . . . . . 6
    5.  The Statute of Limitations is Tolled And Does Not
        Defeat Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    6.  The Public Interest Exception to the Mootness Doctrine Applies . . . 8

B.  **Constitutionality of the CZO.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    1.  The Facial Challenge Fails as a Matter of Law . . . . . . . . . . . . . . . . 10
    2.  An As Applied Challenge Concedes The CZO's Constitutionality . 11
    3.  Considerations in a Facial Challenge . . . . . . . . . . . . . . . . . . . . . . . 12
    4.  The Equal Protection Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . 13

C.  **The Trial Court Erroneously Found the CZO Unconstitutional.** . . . . 14

    1.  Failure to Sever Unconstitutional Provisions . . . . . . . . . . . . . . . . . 14
    2.  Lack of Definitions Does Not Render the CZO Unconstitutional . . 15
    3.  Accessory Use Does Not Allow Check Cashing

or Money Transmission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**D. Acceptance of the Benefits Doctrine.** . . . . . . . . . . . . . . . . . . . . . . . . . . 20

1. Nayeb's Challenge to the Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . 20
2. Nayeb Accepted the Benefits of the Existing
   Certificate of Occupancy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

CASES:                                                                    Page

*Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640 (Tex. 2005) . . . . . . . . . . . . . . . . . . . . 2

*Anderton v. City of Cedar Hill*, 447 S.W.3d 84
(Tex. App. - Dallas 2014, pet. filed) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852
(Tex. App. - Austin 2004, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Baird v. City of Melissa*, 170 S.W.3d 921
(Tex. App. - Dallas 2005, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 18

*Beltran v. Beltran*, 324 S.W.3d 107 (Tex. App. - El Paso 2010, no pet.) . . . . . . . . 2

*Beneficial Finance Co. v. Miskell*, 424 S.W.2d 482
(Tex. Civ. App. - Austin 1968, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Berman v. Parker*, 348 U.S. 26, 75 S. Ct. 98, 99 L. Ed. 27 (1954) . . . . . . . . . . . 22

*Brookside Village v. Comeau*, 633 S.W.2d 790 (Tex. 1982) . . . . . . . . . . . . . . . . 22

*City of College Station v. Turtle Rock Corp.*,
680 S.W.2d 802 (Tex. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*City of Dallas v. Haworth,* 218 S.W.2d 264
(Tex. Civ. App. - Dallas 1949, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . 18

*City of Farmers Branch v. Ramos*, 235 S.W.3d 462
(Tex. App. - Dallas 2007, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*City of Garland v. Kaliney*, 1996 Tex. App. LEXIS 935
(Tex. App. - Dallas 1996, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*City of Mesquite v. Coltharp,* 685 S.W.2d 78
(Tex. App. - Dallas 1984, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Commission for Lawyer Discipline v. Benton,*
980 S.W.2d 425 (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Crawford v. State,* 153 S.W.3d 497 (Tex. App. - Amarillo 2004, no pet.) . . . . . . . 6

*Dallas Merchant's and Concessionaire's Ass'n v. City of Dallas,*
852 S.W.2d 489 (Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Eisenstadt v. Baird,* 405 U.S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972) . . . . 13

*Engelking v. State,* 750 S.W.2d 213 (Tex. Crim. App. 1988) . . . . . . . . . . . . . . . . 15

*Ex parte Matthews,* 873 S.W.2d 40 (Tex. Crim. App. 1994) . . . . . . . . . . . . . . . . . 3

*FDIC v. Nueces County,* 886 S.W.2d 766 (Tex. 1994) . . . . . . . . . . . . . . . . . . . . . 8

*Firemen's Ins. Co. of Newark, New Jersey v. Burch,*
442 S.W.2d 331 (Tex. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868 (Tex. 2000) . . . . . . . 12

*Garrett v. State,* 749 S.W.2d 784 (Tex. Crim. App. 1986) . . . . . . . . . . . . . . . . . . . 6

*Goode v. City of Dallas,* 554 S.W.2d 753
(Tex. Civ. App. - Dallas 1977, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Guaranty Petroleum Corp. v. Armstrong,* 609 S.W.2d 529 (Tex. 1980) . . . . . . . 21

*Harper Park Two, LP v. City of Austin,* 359 S.W.3d 247
(Tex. App. - Austin 2011, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Huckabee v. Texas Dep't of Mental Health & Mental Retardation,*
1997 Tex. App. LEXIS 333 (Tex. App. - Austin 1997, no writ) . . . . . . . . . . . . . 21

*In re Sanchez*, 81 S.W.3d 794 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Smith,* 152 S.W.3d 170 (Tex. App. - Dallas),
*affm'd,* 2006 Tex. Crim. App. LEXIS 187 (Tex. Crim. App. 2006) . . . . . . . . . . . 3

*Juliff Gardens, L.L.C. v. Texas Comm'n on Envtl. Quality*,
131 S.W.3d 271 (Tex. App. - Austin 2004, no pet.) . . . . . . . . . . . . . . . . . . . . . 4

*Karenev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . 12

*Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641 (1933) . . . . . . . . . . . . . . . . . . 7

*Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83 (Tex. 1999) . . . . . . . . . . . . 2

*Patterson v. Planned Parenthood*, 971 S.W.2d 439 (Tex. 1998) . . . . . . . . . . . . . . 4

*Pennington v. Singleton*, 606 S.W.2d 682 (Tex. 1980) . . . . . . . . . . . . . . . . . . . . . 10

*Plyler v. Doe*, 457 U.S. 202, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982) . . . . . . . . 13

*Render v. State*, 316 S.W.3d 846 (Tex. App. - Dallas 2010, pet. ref'd),
*cert. denied,* 562 U.S. 1243, 131 S. Ct. 1533, 179 L. Ed. 2d 348 (2011) . . . . . . . 4

*Rescue Army v. Municipal Court*, 331 U.S. 549,
91 L. Ed. 1666, 67 S. Ct. 1409 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Rose v. Doctors Hosp.*, 801 S.W.2d 841 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . 14

*Salinas v. State,* 2015 Tex. Crim. App. LEXIS 752 (Tex. Crim. App. 2015) . .12, 15

*Scott v. State*, 322 S.W.3d 662 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . 10

*State ex rel. Cockerham v. Cockerham,* 218 S.W.3d 298
(Tex. App. - Texarkana 2007, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*State ex rel. Lykos v. Fine*, 330 S.W.3d 904 (Tex. Crim. App. 2011) . . . . . . . 11, 12

*State v. Rosseau,* 396 S.W.3d 550 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . 12

*State v. Wofford*, 34 S.W.3d 671 (Tex. App. - Austin 2000, no pet.) . . . . . . . . . . 10

*Tex. Dept. of Pub. Safety v. Lafleur,* 32 S.W.3d 911
(Tex. App. - Texarkana 2000, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Texas Ass'n of Business v. Texas Air Control Board,*
852 S.W.2d 440 (Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Travelers Indem. Co. v. Fuller*, 892 S.W.2d 848 (Tex. 1995) . . . . . . . . . . . . . . . 18

*Trulock v. City of Duncanville*, 277 S.W.3d 920
(Tex. App. - Dallas 2009, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Vista Healthcare, Inc. v. Texas Mut. Ins. Co.,* 324 S.W.3d 264
(Tex. App. - Austin 2010, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wood v. State*, 18 S.W.3d 642 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . . 13

*Zaborac v. Tex. Dep't of Pub. Safety*, 168 S.W.3d 222
(Tex. App. - Fort Worth 2005, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Zipp v. Wuemling*, 218 S.W.3d 71 (Tex. 2007) (per curiam) . . . . . . . . . . . . . . . . 2


STATUTES AND RULES:

Article 12.02, Tex. Code Crim. P . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Article 12.05(b), Tex. Code Crim. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Article 12.05(c), Tex. Code Crim. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Article 44.01, Tex. Code Crim. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Article V, Section 8, Texas Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Article XI, Section 5(a), Texas Constitution . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

Chapter 211, Tex. Loc. Gov't Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Chapter 245, Tex. Loc. Gov't Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Section 151.301, Tex. Fin. Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Section 211.003(a)(4), Tex. Loc. Gov't Code . . . . . . . . . . . . . . . . . . . . . . . . 5

Section 211.005, Tex. Loc. Gov't Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Section 245.001(4), Tex. Loc. Gov't Code. . . . . . . . . . . . . . . . . . . . . . . . . 21

Section 31.002, Tex. Fin. Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Section 31.002(a)(25), Tex. Fin. Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Section 31.002(a)(46), Tex. Fin. Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Section 311.011(a), Tex. Gov't Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Section 311.032(a), Tex. Gov't Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Section 51.003, Tex. Loc. Gov't Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## ARGUMENT AND AUTHORITIES

**A.    This Appeal Is Not Moot.**

Farhad Nayeb's ("Nayeb") lead argument is that this appeal is moot. Appellee's Brief p. 4. This assertion, as well as the analysis allegedly supporting that conclusion, is incorrect.

### 1.    Nayeb's Incorrect Position.

Nayeb argues that further action by this Court is precluded since (a) the trial court dismissed each of the citations forming the basis for the prosecution; (b) the two-year statute of limitations appearing in Section 12.02, Tex. Code Crim. P. has expired; and (c) the ordinance supporting the State's complaint no longer exists. While each of these statements may be individually factually correct, they, both individually and collectively, do not moot this case and Nayeb's analysis of the factors which dictate an appellate court's finding of mootness are fundamentally flawed. In support of his position, Nayeb's argument is twofold. First, he argues that, under the mootness doctrine, this Court cannot evaluate the constitutionality of the the City's Comprehensive Zoning Ordinance, Ordinance No. 92-08, as amended (the "CZO"), and secondly, he argues that any decision which this Court could make regarding the CZO's constitutionality would constitute an advisory opinion. Both arguments are incorrect.

1

2.    The Mootness Definition is Not Met in This Case.

The mootness doctrine implicates subject matter jurisdiction. *Trulock v. City of Duncanville*, 277 S.W.3d 920, 923 (Tex. App. - Dallas 2009, no pet.).  A case is moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005). The mootness doctrine dictates that a court avoid rendering an advisory opinion by only deciding an issue that presents a "live" controversy at the time of the decision. *City of Farmers Branch v. Ramos*, 235 S.W.3d 462, 469 (Tex. App. - Dallas 2007, no pet.). An appeal is moot when a court's action on the merits cannot affect the rights of the parties. *Zipp v. Wuemling*, 218 S.W.3d 71, 73 (Tex. 2007) (per curiam).  Essentially, when an actual controversy no longer exists between the parties, "the decision of an appellate court would be a mere academic exercise." *Beltran v. Beltran*, 324 S.W.3d 107, 110 (Tex. App. - El Paso 2010, no pet.). Appellate courts are prohibited from deciding moot controversies. *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999).  However, none of the conditions which could make this case moot exist here and this Court has subject matter jurisdiction to make a determination of the constitutionality of the challenged ordinance.

3.	Factors Demonstrating a Live Controversy.

The dismissal of the citations forming the basis for the prosecution against Nayeb was based on the trial court's determination that the CZO was facially unconstitutional. This is the primary issue presented by this appeal. A determination by this Court that the CZO is constitutional negates the basis for the dismissal and, if reversed or rendered, returns the parties to the position occupied immediately prior to the trial court's determination. Here, the "live" controversies are the constitutionality of the CZO, the enforceability of the CZO at the relevant time frames, as well as the imposition and payment of the statutorily mandated fines. Nayeb's arguments should be denied and his requested relief refused.

a.	The Need For a Determination of Constitutionality is Ripe in This Case.

If a statute or ordinance is facially unconstitutional, there is no valid statute and the charging instrument is void. *Ex parte Matthews*, 873 S.W.2d 40, 43 (Tex. Crim. App. 1994) (appellant challenged the charging instrument as facially unconstitutional in a habeas corpus proceeding); *In re Smith,* 152 S.W.3d 170, 171-72 (Tex. App. - Dallas), *affm'd,* 2006 Tex. Crim. App. LEXIS 187 (Tex. Crim. App. 2006). Here, Nayeb essentially challenged the charging instruments through a motion to dismiss. Since he was successful, the trial court dismissed the citations, thus giving rise to this

3

appeal pursuant to Article 44.01, Tex. Code Crim. P.  The issues presented by this appeal are not "abstract, hypothetical, or remote" and are presented "with clarity, precision and certainty, . . . in clean-cut and concrete form." *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 443 (Tex. 1998); *Rescue Army v. Municipal Court*, 331 U.S. 549, 576, 91 L. Ed. 1666, 67 S. Ct. 1409 (1947).  The result is both a ripe and a justiciable controversy.  Further, notwithstanding Nayeb's argument to the contrary, "the determination of the constitutionality of a statute is unquestionably an issue fit for judicial review." *Juliff Gardens, L.L.C. v. Texas Comm'n on Envtl. Quality*, 131 S.W.3d 271, 278 (Tex. App. - Austin 2004, no pet.).  Finally, the constitutionality of a criminal statute is a question of law which appellate courts review de novo.  *Render v. State*, 316 S.W.3d 846, 856 (Tex. App. - Dallas 2010, pet. ref'd), *cert. denied,* 562 U.S. 1243, 131 S. Ct. 1533, 179 L. Ed. 2d 348 (2011).  Therefore, the argument that this Court lacks the ability to review a trial court's determination of unconstitutionality is without merit.  Here, as shown above, there was, and remains, an actual controversy between the parties concerning the CZO's constitutionality.  Both the "live" controversy evidenced by this issue and this Court's subject matter jurisdiction remain in tact.

b.     The CZO's Enforceability.

Nayeb's argument that the CZO no longer exists is not relevant and ignores the fact that the CZO did exist and was being actively enforced at all times material to the dates of issuance of the citations forming the basis of the State's claims. A municipality's authority to adopt and enforce zoning and other land use regulations is specifically allowed by Chapter 211, Tex. Loc. Gov't Code. Among the permitted provisions of such regulations is the ability to control "the location and use of buildings, other structures, and land for business, industrial, residential or other purposes." Section 211.003(a)(4), Tex. Loc. Gov't Code. Additionally, a municipality is authorized to designate zoning districts and district boundaries and to further "regulate the erection, construction, reconstruction, alternation, repair, or use of buildings, other structures, or land" within those districts. Section 211.005, Tex. Loc. Gov't Code. The CZO designated zoning districts and imposed regulations within those districts consistent with the legislative authorizations appearing in Chapter 211. Therefore, until it was declared unconstitutional by the trial court, the CZO was enforceable. If this Court determines the CZO was and is constitutional, the CZO remains enforceable. Nayeb's argument to the contrary is simply unsupportable. The CZO's enforceability remains a live issue.

c. The Imposition of Mandated Fines.

Based on repeated CZO violations Nayeb was issued 54 citations. These citations were tried before the Melissa Municipal Court in two separate trials. After finding Nayeb guilty of each of the CZO violations, the Municipal Court imposed fines totaling more than $90,000.00. Nayeb then posted bonds in excess of $150,000.00 to initiate his appeal to the County Court at Law. Nayeb's argument seeks to usurp this Court's consideration of the CZO's constitutionality and thus improperly circumvent the imposition of fines for the CZO violations. A dispute over the levy of a fine maintains a live controversy. *Crawford v. State*, 153 S.W.3d 497, 505 (Tex. App. - Amarillo 2004, no pet.). As a result, the issues raised in this appeal regarding the assessment of the statutorily mandated fines cannot be moot.

4. The Alleged Request for an Advisory Opinion.

The State does not seek an advisory opinion. The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties. *Texas Ass'n of Business v. Texas Air Control Board,* 852 S.W.2d 440, 444 (Tex. 1993). Article V, Section 8 of the Texas Constitution does not empower Texas courts to render an advisory opinion. *Firemen's Ins. Co. of Newark, New Jersey v. Burch*, 442 S.W.2d 331, 333 (Tex. 1968); *Garrett v. State*, 749 S.W.2d 784, 803 (Tex.

6

Crim. App. 1986). The Supreme Court has discussed the jurisdiction of appellate courts to issue advisory opinions and held:

> . . . Ordinarily, we believe the rendition of advisory opinions is to be regarded as the exercise of executive rather than judicial power . . . the Attorney General, a member of the Executive Department, is the only state officer expressly authorized to render such opinions. State Constitution, article 4, §§ 1, 22.

*Morrow v. Corbin*, 122 Tex. 553, 558, 62 S.W.2d 641, 644 (1933).

The questions presented in this appeal are not abstract questions of law that have no binding effect. Instead, a determination by this Court will resolve the live issues regarding the CZO's constitutionality, its enforceability, and the State's ability to impose the required fines. Seeking a resolution of these controversies is not a request for an advisory opinion.

5.    The Statute of Limitations is Tolled And Does Not Defeat Jurisdiction.

Article 12.05(b), Tex. Code Crim. P., provides that "[t]he time during the pendency of an indictment, information, or complaint shall not be computed in the period of limitation." Thus, while the complaint is pending, limitations is tolled. Article 12.05(c), Tex. Code Crim. P., defines "during the pendency" as "that period of time  beginning with the day the indictment, information, or complaint is filed in a court of competent jurisdiction, and ending with the day such accusation is, by an

7

order of a trial court having jurisdiction thereof, determined to be invalid for any reason." Therefore, even assuming limitations is not further tolled during this appeal, the applicable limitations period will not expire until March 12, 2016, and a new complaint may be filed at any time prior to that date. As a result, Nayeb's argument that this appeal is moot based on the statute of limitations is without merit.

6. <u>The Public Interest Exception to the Mootness Doctrine Applies.</u>

Even if otherwise moot, there are three recognized exceptions to the mootness doctrine. They are: (1) the capable-of-repetition-yet-evading-review exception; (2) the collateral consequences exception; and (3) the public interest exception. *State ex rel. Cockerham v. Cockerham,* 218 S.W.3d 298, 302 (Tex. App. - Texarkana 2007, no pet.). If the Court believes for any reason that this dispute is otherwise moot, the "public interest" exception to the mootness doctrine applies.[1] This exception allows appellate review of a question of considerable public importance if that question is capable of repetition between either the same parties or other members of the public, but for some reason evades appellate review. *Tex. Dept. of Pub. Safety v. Lafleur,* 32 S.W.3d 911, 914 (Tex. App. - Texarkana 2000, no pet.). In this case, the issue of the

---

[1] In *FDIC v. Nueces County*, 886 S.W.2d 766, 767 (Tex. 1994) the Supreme Court stated "[t]his Court has not previously decided the viability of the public interest exception, and we find it unnecessary to reach that issue here." The Court has not subsequently addressed the issue.

CZO's constitutionality is of considerable public importance and the issues relating to the prior enforcement of the terms of the CZO are capable of repetition between the City and other members of the public. Specifically, the CZO was first adopted on August 25, 1992 and was subsequently amended eleven (11) times. The last amendment was March 27, 2012 and it remained in force until February 12, 2013, when it was superceded by a new ordinance. During the time frame of its existence, the City, the Planning and Zoning Commission, and the City Council have each resolved numerous issues with citizens based on the CZO's regulatory framework. This is best exemplified by this Court's opinion in *Baird v. City of Melissa*, 170 S.W.3d 921, 924 (Tex. App. - Dallas 2005, pet. denied) which resolved a dispute under the CZO. If the CZO is facially unconstitutional as alleged by Nayeb, all of the actions taken by the City during the term of the CZO's existence are arguably void and subject to attack pursuant to Section 51.003, Tex. Loc. Gov't Code. As a result, the constitutionality argument directly affects both the City and its citizens. Assuming the Court believes that the mootness doctrine may be applicable here, the public interest exception precludes the application of the doctrine.

**B.    Constitutionality of the CZO.**

1.    The Facial Challenge Fails as a Matter of Law.

A facial challenge to a statute on the basis of vagueness will be upheld only if the statute is impermissibly vague in all its applications. *State v. Wofford*, 34 S.W.3d 671, 678 (Tex. App. - Austin 2000, no pet.).  Nayeb appears to argue both facial unconstitutionality and as applied unconstitutionally in both his Motion Challenging Constitutionality as well as his brief. (Supp. CR p. 26, Brief p. 8 and 18).  However, a claim that a statute is unconstitutional "on its face" is a claim that the statute, by its terms, always operates unconstitutionally.  *Scott v. State*, 322 S.W.3d 662, 665 n.1 (Tex. Crim. App. 2010).  That is and was Nayeb's contention since he argues that all convenience stores similarly situated within the City could not know what the CZO prohibited based on the lack of definitions and the application of the term "accessory uses" in connection with both check cashing and money transmission.  However, a law is not unconstitutionally vague "merely because it does not define words or phrases."  *Vista Healthcare, Inc. v. Texas Mut. Ins. Co.*, 324 S.W.3d 264, 273 (Tex. App. - Austin 2010, pet. denied).  Further, when applying the fair-notice test, courts allow statutes imposing economic regulation greater leeway than they allow penal statutes.  *Pennington v. Singleton*, 606 S.W.2d 682, 689 (Tex. 1980).  Courts demand less precision of statutes that impose only civil penalties than of criminal statutes

10

because their consequences are less severe. *Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437-38 (Tex. 1998). The trial court clearly believed the challenge was facial since its order stated that the ordinance is "unconstitutionally vague because it does not give fair notice to citizens accused of violating the ordinance by cashing check and/or transmitting money allegedly contrary to the permitted uses of a premises covered by the ordinance." (CR 32-33). Notwithstanding the trial court's ruling, Nayeb failed to rebut the presumption of constitutionality because he did not prove that the statute operated unconstitutionally in all its applications and could never be constitutionally applied to any defendant under any set of facts or circumstances. This Court obviously believed otherwise in *Baird*.

2.    An As Applied Challenge Concedes The CZO's Constitutionality.

Raising only an "as applied" challenge concedes the general constitutionality of the statute and merely challenges the statute's constitutionality as applied to the challenger. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011). However, Nayeb never conceded the constitutionality of any provision within the CZO. His primary argument that the challenge was as applied rather than facial is based on the premise that the City's Code Enforcement Officer testified and such factual evidence is unnecessary in a facial challenge. Appellee's Brief p. 7. However,

11

a trial court has an obligation to hear certain facts prior to making any determination of constitutionality. *Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852, 857 (Tex. App. - Austin 2004, no pet.). Further, since the language of the trial court's order made absolutely no mention of the application of the CZO to Nayeb, it did not base its ruling on an as applied challenge. Therefore, only the facial constitutionality of the CZO may be considered.

3. <u>Considerations in a Facial Challenge.</u>

"To prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances." *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). Courts are to "consider the statute only as it is written, rather than how it operates in practice." *State ex rel. Lykos*, 330 S.W.3d at 908; *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000). *Id.* Evidence of how the statute operates in actual practice is irrelevant. *Salinas v. State*, 2015 Tex. Crim. App. LEXIS 752 * 8 (Tex. Crim. App. 2015). A facial challenge to a statute seeks to vindicate not only the challenger's own rights, but also those of others who may also be adversely impacted by the statute in question. *Karenev v. State*, 281 S.W.3d 428, 435 (Tex. Crim. App. 2009). That is the exact determination made by the trial court in this case. Therefore, only the facial challenge to the CZO's constitutionality may be considered by this Court.

12

4. The Equal Protection Arguments.

Although making a facial constitutional challenge, Nayeb also argues that he was subjected to disparate treatment by enforcement officials for CZO violations. The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated shall be treated alike" under the law. *Plyler v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982); *Wood v. State*, 18 S.W.3d 642, 651 (Tex. Crim. App. 2000). However, a difference in treatment need be only "rationally related to a valid public purpose" to withstand equal protection scrutiny. *Eisenstadt v. Baird*, 405 U.S. 438, 447 n.7, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972). The Code Enforcement Officer's testimony was that Nayeb's operation was the CZO's sole violator with regard to check cashing and money transmission. (RR Vol 3, p. 30, l. 6-13). In both his Motion and Brief, Nayeb argues that other convenience stores were violating the statute by engaging in check cashing and money transmission but were not given citations. Appellee's Brief p. 20 - 21. However, the Code Enforcement Officer's testimony presented on this issue contradicted this conclusory argument and Nayeb has presented no contrary evidence. (RR Vol. 3, p. 30, ll. 6 - 13). Even so, the argument is both irrelevant and unnecessary since a facial challenge is not dependent upon any application of the statute to the challenger and evidence of its application to

13

others is not germane to the challenge. There is no evidence of an equal protection issue being present.

**C.    The Trial Court Erroneously Found the CZO Unconstitutional.**

Nayeb argues that "Section 20 of the Ordinance is fatally vague because it fails to distinguish between the particular accessory uses which are permitted and which are prohibited...." Brief p. 13-14. However, the trial court did not distinguish which portions of the CZO were constitutional and which were not. It determined that the entirety of the CZO was unconstitutional. This determination was erroneous.

1.    Failure to Sever Unconstitutional Provisions.

If the CZO was not facially unconstitutional in its entirety, the trial court should have severed those aspects of the CZO which it found to be unconstitutional and saved the balance. *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 844-45 (Tex. 1990). Specifically, the *Rose* Court held that "[w]hen, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, dependent on each other, operating together for the same purpose, or otherwise so connected in meaning that it cannot be presumed the legislature would have passed the one without the other." Section 36 of the CZO contains a severance provision and, pursuant to Section 311.032(a), Tex. Gov't Code, the offending provisions should have been severed

14

unless the entirety of the CZO failed to meet the standards Nayeb asserts as being critical. Appellee's Brief p. 14 -15. Nayeb now argues that he was only complaining about Section 20. But the trial court failed to sever any provisions. (CR 32 -33). If, as he now contends, only Section 20 was unconstitutional, why did Nayeb remain silent when the entire ordinance was declared unconstitutional? The reason is clear - he wanted the entirety of the CZO to be declared unconstitutional to avoid a risk that if only a portion of the statute was unconstitutional the unsegregated provisions might provide a basis for the prosecution of the citations forming the basis of the State's complaint. The trial court allowed that avoidance by not finding any salvageable provisions and declaring the entirety of the CZO facially unconstitutional. With such a finding, no severance was necessary. *Salinas,* 2015 Tex. Crim. App. LEXIS 752 * 6 -7.

2. <u>Lack of Definitions Does Not Render the CZO Unconstitutional.</u>

Nayeb's primary reason for asking for a declaration of unconstitutionality was that "105 of the 117 commercial uses" are not defined. Brief p. 14. However, a statute is not unconstitutionally vague merely because it does not define words or phrases. *Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988). Words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite. *Zaborac*

*v. Tex. Dep't of Pub. Safety*, 168 S.W.3d 222, 225 (Tex. App. - Fort Worth 2005, no pet.). In connection with the undefined terms, Nayeb specifically argues that check cashing and money transfer are functions performed by banks and financial institutions and, since there is no definition of those terms in the CZO, his business qualified as a bank and a financial institution to both cash checks and engage in money transmission. However, this argument ignores two facts. First, the undisputed permitted land use as well as the permitted business use of the property under the CZO was as a convenience store with gas pumps as evidenced by the certificate of occupancy and not as a bank. Chapter 211, Tex. Loc. Gov't Code, authorizes a home-rule municipality to adopt such regulations. Secondly, he ignores the fact that banks and money transmission are both activities regulated by Texas law. Compliance with this regulatory scheme is required regardless of where the banking or money transmission activities are located. Nayeb did not demonstrate compliance with these regulations, and, by failing to prove that he had the authority to employ those uses, did not meet his burden of proof. For example, Section 31.002, Tex. Fin. Code, defines the term "bank" as a state or national bank and further defines the term "banking." Additionally, the term "money transmission" is defined by Section 151.301, Tex. Fin. Code, as "the receipt of money or monetary value by any means in exchange for a promise to make the money or monetary value available at a later time or different

16

location...." To engage in banking or money transmission, the Finance Code requires a charter or license issued by the State of Texas or the Federal government. There is no evidence that Nayeb's business held any of the licenses or charters required by state law. Further, Nayeb gratuitously claims that his business was a "financial institution." However, the term "financial institution" is specifically defined in Section 31.002(a)(25), Tex. Fin. Code, as a "bank, savings association, or savings bank maintaining an office, branch, or agency office in this state." Section 31.002(a)(46) defines a savings association as a "state or federal savings association" and further defines as savings bank as a "banking association or limited banking association organized or reorganized under this subtitle...." No evidence was presented to the trial court that Nayeb's business qualified, under either state or federal law, as either a "bank" or a "financial institution." Finally, Nayeb presented no evidence that he could lawfully engage in money transmission under Texas law. Because each of these challenged uses were specifically defined by state law, the lack of a definition in Section 20 of the CZO could not have rendered either that section or the entirety of the CZO unconstitutional. Again, Nayeb presented no evidence of either his or his business' ability to qualify as a bank or financial institution. As a non-qualifying entity under state law, it was unlawful for Nayeb or his business to lawfully engage in transactions as a bank or financial institution. Since Nayeb had the

17

burden of proof that he qualified as a bank or financial institution or was licensed to engage in money transmission, his constitutional challenge failed even though those terms were undefined. *Travelers Indem. Co. v. Fuller*, 892 S.W.2d 848, 850 (Tex. 1995).

3.      <u>Accessory Use Does Not Allow Check Cashing or Money Transmission.</u>

The CZO defines the term accessory use "as a subordinate use which is incidental to the main or primary use." CZO, Section 31.2(2), Appellant's Brief, Tab 3. Nayeb argues that since check cashing and money transmission were not specifically prohibited by the CZO, both activities were allowed as an accessory use of his business premises which were zoned for a convenience store with gas pumps. However, the CZO specifically sets forth a schedule of permitted activities in a C-2 Zoning District. All other uses are prohibited. *Baird,* 170 S.W.3d at 925. The *Baird* decision conformed with other prior decisions of this Court that uses not specifically allowed excluded other uses claimed to be incidental or accessory to a permitted use. *City of Dallas v. Haworth,* 218 S.W.2d 264 (Tex. Civ. App. - Dallas 1949, writ ref'd n.r.e.); *Goode v. City of Dallas,* 554 S.W.2d 753 (Tex. Civ. App. - Dallas 1977, no writ); *City of Mesquite v. Coltharp,* 685 S.W.2d 78 (Tex. App. - Dallas 1984, writ ref'd n.r.e.). Contrary to *Baird* and the other decisions of this Court, Nayeb argues that the omission from the grid of permitted uses does not mean the omitted use is

18

prohibited. (RR Vol. 4, p. 35, l. 2-4). Although defined, the term "accessory use" was only specifically used within the CZO in connection with the definitions of "Farms", "Orchards", and "Schools, public." Therefore, accessory uses of convenience stores must be limited to those authorized uses specifically defined by the CZO within the C-2 Zoning District since the CZO's words or phrases must be read in the context in which they are used. Section 311.011(a), Tex. Gov't Code. The State, through the CZO, demonstrated that each of the activities, other than check cashing and money transmission, undertaken by Nayeb at the convenience store after his acquisition of that property were permitted uses in a C-2 Zoning District. (Supp. CR 38, App. Tab 3, Section 20, p. 21-25). The specific language of the CZO demonstrates that the term "accessory use" did not apply in a C-2 Zoning District to allow the use of a property zoned as a convenience store with gas pumps for check cashing or money transmission. Neither check cashing nor money transmission is a permitted use within the district. *Id.* The lack of a definition of these terms is unavailing since state law specifically prescribes how a business is created and operated as a bank, financial institution, or entity authorized to engage in money transmission. The CZO is not required to specifically address those qualifications and its failure to do so was not arbitrary or vague since state law determined that issue. In Texas, ordinances of home-rule municipalities are only void if they are inconsistent with state law. Article

19

XI, Section 5(a), Texas Constitution. When an ordinance fails to address a subject regulated by state law, it is not void since state law has essentially preempted any need for additional regulatory action. "[I]f the Legislature decides to preempt a subject matter normally within a home-rule city's broad powers, it must do so with 'unmistakable clarity.'" *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002). The provisions of the Texas Finance Code clearly accomplish that purpose. Nayeb's constitutional challenge on this basis fails.

**D.      Acceptance of the Benefits Doctrine.**

1.      <u>Nayeb's Challenge to the Doctrine.</u>

Nayeb also argues that he "did not accept benefits bestowed on him by The City of Melissa. His rights existed the day he brought the property." Brief p. 22. Essentially, he is arguing that he had a vested right to cash checks and engage in money transmission. This argument is wrong. First, it fails to recognize that under Chapter 245, Tex. Loc. Gov't Code (the "Vested Rights Statute"), the initial development permit application by the developer defines the scope of the "project" for the purposes of vested rights. *Harper Park Two, LP v. City of Austin,* 359 S.W.3d 247, 256 (Tex. App. - Austin 2011, pet. denied). Here, although Nayeb completely failed to introduce evidence of the "project," he has admitted that the "project" was a "convenience store with gas pumps." Appellee's Brief p. 2. The occupancy permit

the City issued pursuant to Chapter 245 was for that use. (RR Vol 3, p. 14, ll. 5-15). Therefore, Nayeb's "vested rights," if any, did not include checking cashing or money transfer. However, even assuming the prior owner has used the premises for checking cashing and money transmission, which is specifically denied and for which there is no evidence, this Court has stated "the ongoing operation of a business is not a 'project' creating any vested property rights." *Anderton v. City of Cedar Hill*, 447 S.W.3d 84, 97 (Tex. App. - Dallas 2014, pet. filed). Nayeb's vest rights argument fails. Further, Nayeb has argued that check cashing and money transmission are banking functions for which he qualified. Notwithstanding his legal inability to perform banking functions, the Vested Rights Statute does not apply to rights granted by state agencies. Chapter 245 only applies to a "political subdivision acting in its capacity of processing, approving, or issuing a permit." Section 245.001(4), Tex. Loc. Gov't Code. Departments, boards, or agencies of the State are not political subdivisions of the State because they have statewide jurisdiction rather than being an entity having only local or limited jurisdiction. *Huckabee v. Texas Dep't of Mental Health & Mental Retardation,* 1997 Tex. App. LEXIS 333 * 4 - 5 (Tex. App. - Austin 1997, no writ) (citing *Guaranty Petroleum Corp. v. Armstrong*, 609 S.W.2d 529, 531 (Tex. 1980)). In *Armstrong* the supreme court defined the attributes of a political subdivision as (a) an entity having jurisdiction over a portion of the State; (b) the

21

members of its governing body are elected in local elections or are appointed by locally elected officials; and (c) an entity having the power to assess and collect taxes. *Id.* at 531. Banking and money transfer functions are controlled by state statute and thereby preempt the right of a city to regulate those activities. Article XI, Section 5(a), Texas Constitution; *Dallas Merchant's and Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 491 (Tex. 1993). As a result, Nayeb could not have a vested right in any potential authorization created under the auspices of the Texas Finance Code. This argument simply exemplifies the fact that Nayeb merely chooses to ignore the CZO's prohibitions as well as the fact that the adoption and enforcement of an ordinance is a valid exercise of a city's police power so long as the regulation was adopted to accomplish a legitimate goal, that is, it must be "substantially related" to the health, safety, or general welfare of the people. *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 805 (Tex. 1984). Zoning is an exercise of police power. *Brookside Village v. Comeau*, 633 S.W.2d 790,792-93 (Tex. 1982). "If reasonable minds may differ as to whether or not a particular zoning ordinance has a substantial relationship to the public health, safety, morals, or general welfare . . . the ordinance must stand as a valid exercise of the city's policy power." *Turtle Rock,* 680 S.W.2d at 805 (citing *Berman v. Parker*, 348 U.S. 26, 33, 75 S. Ct. 98, 99 L. Ed. 27 (1954)). Nayeb acquired no vested right to engaged in check cashing or money transmission

22

under the authority of any statewide department and the CZO lawfully prohibited both activities.

2.    Nayeb Accepted the Benefits of the Existing Certificate of Occupancy.

The prior permitted uses of the premises, as evidenced by the certificate of occupancy, which Nayeb purchased in 2012 did not include check cashing or money transmission. (RR Vol 3, p. 15, l. 6-8). Nayeb did not obtain a new certificate of occupancy and stated to City officials that nothing about his occupancy would differ from those employed by the prior owner. (RR Vol 3, p. 14, l. 3 - 17). Ultimately, the City discovered that statement was inaccurate and that, among others, the uses of check cashing and money transmission had been added. (RR Vol 3, p. 15, l. 9 through p. 17, l. 21). Because no new certificate of occupancy was sought or obtained for these additional uses, Nayeb's property rights were never expanded. Nayeb had no vested right to engage in check cashing or money transmission on the date he acquired the convenience store. Nayeb simply began engaging in new businesses without requisite City approval. Nayeb's acceptance of the ability to operate his business under the existing certificate of occupancy operates as a waiver of his ability to challenge the CZO's regulatory provisions based solely on his unilateral, intentional, intelligent and voluntary decision to change uses without City approval. *City of Garland v. Kaliney*, 1996 Tex. App. LEXIS 935 * 13 - 14 (Tex. App. - Dallas 1996,

23

writ denied); *Beneficial Finance Co. v. Miskell*, 424 S.W.2d 482, 484 (Tex. Civ. App. - Austin 1968, writ ref'd n.r.e.). Nayeb argues that no waiver occurred because the CZO "did not prohibit the conduct" shown by changed uses without City approval. Brief, p. 23. This is simply factually inaccurate and is disputed by the CZO's failure to authorize such activities, the warning letters from the City Manager to Nayeb to cease the prohibited conduct as well as the 54 the citations which were ultimately issued. (RR Vol 3, p. 37, l. 18 through p. 38, l. 7). After presentation of the warning letters, Nayeb was well aware of the CZO's prohibition against check cashing and money transmission but nonetheless voluntarily continued with those offending activities knowing they were not covered by the existing certificate of occupancy. Nayeb's actions constituted waiver and he was estopped from seeking a determination of the CZO's constitutionality by having accepted the benefits of the certificate of occupancy which existed when he acquired the business.

## CONCLUSION

Each of Nayeb's arguments fail. The issues presented remain live. No advisory opinion has been requested, and the applicable statute of limitations has been tolled. Nayeb did make a facial challenge to the CZO and the trial court agreed even though that determination was erroneous. Even Nayeb's as applied arguments fail since he could not legally engage in business as either a bank or a financial institution and did

24

not possess the licenses required by state law to engage in money transmission. By accepting the benefits of the certificate of occupancy as it existed on the day of acquisition of the business, Nayeb waived any right to declare the CZO unconstitutional.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the State of Texas prays that this Court reverse the Trial Court's finding that the City of Melissa, Texas' Comprehensive Zoning Ordinance No. 92-08 is unconstitutionally vague; direct the Trial Court to vacate its March 12, 2014 Order; reverse the dismissals of the charging instruments; remand this case to the Trial Court for reinstatement of the State's complaints and trial of the various offenses; and for such other and further relief to which the State of Texas may be entitled.

Respectfully submitted,

/s/ Larry R. Boyd
**LARRY R. BOYD**
State Bar No. 02775000
lboyd@abernathy-law.com
**ABERNATHY ROEDER BOYD & HULLETT, P.C.**
1700 Redbud Blvd., Suite 300
McKinney, Texas 75069
Telephone: (214) 544-4000
Telecopier: (214) 544-4040

25

**SPECIAL PROSECUTOR FOR THE STATE OF TEXAS**

## CERTIFICATE OF COMPLIANCE

I certify that this Reply Brief was prepared with WordPerfect Version X5, and that, according to that program's word count function, the sections covered by TRAP 9.4(i)(1) contain 5,800 words.

/s/ Larry R. Boyd

Larry R. Boyd

## CERTIFICATE OF SERVICE

I certify that I served a copy of the Appellant's Reply Brief on the following parties or their counsel via electronic mail or by hand delivery on the 3rd day of August 2015.

Thomas H. Keen
Law Offices of Thomas H. Keen, PLLC
555 Republic Drive, Suite 325
Plano, Texas 75074
tom@keenlawfirm.com

/s/ Larry R. Boyd
Larry R. Boyd